## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOHN FOCHE,

      Plaintiff,

v.                                   CASE NO: 8:14-cv-2871-T-26TGW

NAPA HOME & GARDEN, INC., et al.,

      Defendants.

_____/

## O R D E R

Before the Court is Defendant, Losorea Packaging, Inc.'s Motion to Dismiss (Dkt. 36) and Plaintiff's Response and Opposition (Dkt. 42). After careful consideration of the allegations of the Second Amended Complaint (Dkt. 33), the parties' submissions, and the applicable law, the Court concludes that the motion should be granted.

### PERTINENT ALLEGATIONS AND FACTS

Defendant Losorea Packaging, Inc. (Losorea) filed a motion to dismiss the First Amended Complaint, which was denied as moot in view of the filing of the Second Amended Complaint.[1] This Court held in abeyance Plaintiff's request to take jurisdictional discovery until all Defendants, other than Losorea, had filed responses to

---

[1] See docket 34 (Order dated Apr. 6, 2015).

the Second Amended Complaint.[2]  After those Defendants filed their answer and

defenses, and after Losorea renewed its motion to dismiss in which it again argued that

this Court lacked personal jurisdiction over it, the Court authorized the Plaintiff to

undertake discovery on the issue of whether this Court had personal jurisdiction over

Losorea before having to respond to Losorea's motion to dismiss.[3]  The time for

conducting discovery on personal jurisdiction has now passed.  It is evident from

Plaintiff's response and the file that no additional discovery took place, at least none that

was attached to or relied upon in the response.[4]

The Second Amended Complaint alleges personal jurisdiction over Losorea as

follows:

> At all times relevant herein, [Losorea] conducted substantial
> business in Florida, and the cause of action herein arises out
> of a tort committed in Florida and out of Defendant's business
> activities in Florida.  Additionally, Defendant caused injury to
> Plaintiff within Florida and was engaged in solicitation or
> service activities within Florida and/or processed, serviced, or
> manufactured products, materials, or things that were used or
> consumed within this state in the ordinary course of
> commerce, trade, or use.  Therefore, personal jurisdiction is

---

[2]  See docket 34 ("The Court holds in abeyance the Plaintiff's request to undertake
jurisdictional discovery until the Defendants have filed their responses.").

[3]  See docket 37.

[4]  The exhibits attached to the Response (the Material Safety Data Sheets) are the
exact same exhibits previously attached to the Plaintiff's Motion for Leave to Conduct
Discovery on the Issue of Personal Jurisdiction.  Compare docket 42-1 with dockets 26-1
& 26-2.

proper under Fla. Stat. § 48.193 and the Due Process Clause
of the United States of Constitution.[5]

The Second Amended Complaint further alleges that Losorea "either packages the subject

fuel . . . or is the processing plant for the subject fuel manufactured by Defendant Fuel

Barons, Inc. for sale."[6]  The fuel "was defective and unreasonably and inherently

dangerous as to its . . . manufacture, packaging, . . .causing the fuel to be in a defective

condition . . ."[7]  Losorea "manufactured the Napa Home and Garden subject fuel and /or

its packaging"[8] and is "strictly liable for manufacturing, . . . and/or placing a defective

and unreasonably dangerous product into the stream of commerce . . ."[9]  The Second

Amended Complaint continues, alleging that Losorea "had the technology and knowledge

to incorporate a 'vapor barrier' in the bottle . . . [that] would have protected Plaintiff . .

."[10]  In connection with the product, Losorea "had a duty to warn users of the dangers,"

"failed to warn of the inherent and latent defects," "failed to provide a product that met all

[regulations]," and "failed to . . .manufacture, inspect, . . . a product that was safe for its

---

[5]  See docket 33, para. 7.

[6]  See docket 33, para. 50.

[7]  See docket 33, para. 51.

[8]  See docket 33, para. 52.

[9]  See docket 33, para. 53.

[10]  See docket 33, para. 58.

intended use."[11]  The defective condition of the dangerous product caused Plaintiff's injuries.[12]

Plaintiff submits a copy of two Material Safety Data Sheets (MSDS) which are each dated December 2009.  One MSDS shows that NAPAfire™ Ethanol Gel Fuel is "Manufactured Under License from Napa Home and Garden Inc. [in Duluth, Georgia] by Losorea Packaging Inc." in Woodstock, Georgia.[13]  The other MSDS states that OZOfire™ Ethanol Fuel is "Manufactured Under License from Fuel Barons Inc. [in Las Vegas] by Losorea Packaging Inc." in Woodstock, Georgia.[14]  Plaintiff also points out that Losorea has been hailed into Florida courts on two separate prior occasions in two lawsuits filed in the Middle District of Florida.[15]  No additional declarations or evidence have been submitted by the Plaintiff after the additional time was allotted for discovery on this issue.

---

[11]  See docket 33, paras. 59, 60, 61 & 62.

[12]  See docket 33, para. 63.

[13]  See docket 42, Exh. 1.

[14]  See docket 42, Exh. 1.

[15]  See O'Toole v. Napa Home & Garden, Inc., Case No. 8:11-cv-2724-T-23AEP (M.D. Fla. 2012); Ginsburg v. Tad A. Walgreen, No. 6:12-cv-77-Orl-22KRS (M.D. Fla. 2012).  Personal jurisdiction was not contested in either case.  In both O'Toole and Ginsburg, Losorea filed answers without filing motions to dismiss.  See docket 29 in 8:11-cv-2724-T-23AEP and dockets 51 & 61 in 6:12-cv-77-Orl-KRS.

Losorea offers two declarations of its president to contest these allegations.[16] According to the declarations, Losorea is a packaging company which packages "aerosol, adhesive and liquid products manufactured by others as well as its own products."[17]  Fuel Barons engaged Losorea to package three of Fuel Barons' products including a "pourable eco-fuel gel," a "citronella fuel-gel," and an "ethanol liquid fuel."[18]  Although Losorea bottled the fuels for Fuel Barons, it was not its only bottler and/or packager.[19]  According to the president, "there is no evidence that the bottle of the 'pourable eco-gel fluid' alleged to have contributed to the injuries of Plaintiff was bottled by Losorea and not packaged by a different packager."[20]

The packaging process of the three fuels begins with Fuel Barons paying for and delivering to Losorea the bottles, labels, caps, and chemicals necessary to bottle the fuel.[21] The formulas for the fuels were designed and developed by Fuel Barons.[22]  Losorea had no involvement in the design, manufacture, distribution or sale of the Firelites firepots.[23]

---

[16]  See dockets 14-1 & 36-1.

[17]  See docket 14-1, para. 4.

[18]  See docket 14-1, para. 5.

[19]  See docket 14-1, para. 6.

[20]  See docket 14-1, para. 6.

[21]  See docket 14-1, para. 7.

[22]  See docket 14-1, para. 8.

[23]  See docket 36-1, para. 9.

Losorea then mixes the ingredients, which were supplied by Fuel Barons with instructions from Fuel Barons.[24]  The formulation provide by Fuel Barons required mixing 96.9 pounds of ethanol, 2.2 pounds of citronella oil, and .9 pounds of Klucel powder for every 100 pounds of fuel gel.[25]  After mixing, Losorea puts the fuel in the bottles and affixes and seals the caps and the labels.[26]  Losorea then places the bottles in cartons and stacks them on pallets.[27]  Once loaded, Fuel Barons picks up the pallets from Losorea at Losorea's plant in Georgia, either directly or through Fuel Barons' distributor, NAPA.[28]

Losorea invoiced Fuel Barons a bottling fee of fifty cents per quart bottle packaged and one dollar per gallon bottle packaged.[29]  Losorea claims it never shipped any of Fuel Barons' products or Firelites products to anyone or placed them in the stream of commerce anywhere, but in particular never Florida.[30]  Losorea avers it had no knowledge regarding where the packaged bottles were headed or whether they would be shipped to Florida.[31]  Losorea did not conduct any safety tests on the products, nor did it ever sell

---

[24]  See docket 14-1, para. 9.

[25]  See docket 36-1, para. 8.

[26]  See docket 14-1, para. 9.

[27]  See docket 14-1, para. 9.

[28]  See docket 14-1, para. 10.

[29]  See docket 14-1, para. 13.

[30]  See dockets 14-1, para. 11 & 36-1, para. 10.

[31]  See docket 14-1, para. 12.

any of Fuel Barons' products to the public, any distributor for resale, any retailer, or any person or entity.[32]  Losorea only received the bottling fee from the packaging of the products, and received no benefit from the sale of the products in any state, including Florida.[33]  The sole agreement between Losorea and Fuel Barons relating to the fuel products was unexecuted and was "to act as a contract packager of the Fuel Barons products" for the bottling fee.[34]  Losorea claims it has never had a contract with either Defendant The Fresh Market, Inc., or Defendant NAPA to sell Fuel Barons' fuel products or Firelites firepots.[35]  "No one at [Losorea] ever saw or approved of the reference to it in the [MSDS] posted by Defendant NAPA on its website."[36]  Losorea did not become aware of the MSDS until it was presented a copy in this lawsuit.[37]

Losorea has made only "a nominal amount of sales to customers located in the State of Florida" for the four-year period for the years 2010 through 2013.[38]  The highest percentage of revenue collected by the customers in Florida for any given year was 0.694

---

[32]  See docket 14-1, para. 14.

[33]  See docket 14-1, para. 16.

[34]  See docket 36-1, para. 13.

[35]  See dockets 14-1, para. 20 & 36-1, para. 11.

[36]  See docket 36-1, para. 14.

[37]  See docket 36-1, para. 14.

[38]  See docket 14-1, para 19.

per cent.[39]  Losorea makes the requisite claims that it is not registered to do business in Florida, did not solicit business in Florida, and  has never solicited or initiated business in Florida.[40]  Losorea further avers that it does not currently own or rent property in Florida, does not have employees in Florida, and does not have offices or facilities in Florida.[41] Against this backdrop, Losorea asserts that this Court cannot exercise personal jurisdiction over it for several reasons discussed below.

## DISCUSSION

To exercise personal jurisdiction over a defendant, federal courts sitting in diversity must establish that both the requirements of the state long-arm statute and the Due Process Clause of the Fourteenth Amendment are met.[42]  Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 (11th Cir. 1999) (citing Sculptchair, Inc. v. Century Arts Ltd., 94 F.3d 623, 626 (11th Cir. 1996)).  First, the plaintiff "need only allege sufficient facts to make out a prima facie case of jurisdiction."  Posner, 178 F.3d at 1214.  Only if the defendant challenges personal jurisdiction through affidavits, documents, or other evidence does the plaintiff then bear the burden of submitting evidence to prove

---

[39]  See docket 14-1, para. 19.

[40]  See docket 14-1, para. 17.

[41]  See docket 14-1, para. 18.

[42]  The Due Process Clause requires "minimum contacts" with the forum state such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829 (11th Cir. 1990).

jurisdiction.  Posner, 178 F.3d at 1214 (citing Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989)).  If the allegations of the complaint and plaintiff's submissions conflict with the defendant's sworn proof, all reasonable inferences must be construed in the plaintiff's favor.  Snow v. DirecTV, Inc., 450 F.3d 1314, 1317 (11th Cir. 2006); Gregory v. EBF & Assocs., L.P., 595 F.Supp.2d 1334, 1339 (S.D.Fla. 2009) (quoting Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1268-69 (11th Cir. 2002)).

Florida's long-arm statutes provides two types of personal jurisdiction: specific jurisdiction under section 48.193(1), Florida Statutes, which arises from the defendant's activities in Florida related to the claims articulated in the lawsuit; and general jurisdiction under section 48.193(2), Florida Statutes, which covers a defendant's "substantial and not isolated" activities in Florida that may be totally unrelated to the claim in litigation.  See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 n.3 (11th Cir. 2006).   The Second Amended Complaint alleges personal jurisdiction based on both specific and general jurisdiction.

Losorea argues that there is no proof that Losorea packaged the particular bottle that Plaintiff purchased, given the fact that Fuel Barons contracts with other packagers. Losorea collects only a bottling fee from Fuel Barons, but does not purchase, design, or manufacture the components, does not safety test the products, and does not create or design the labels already affixed on the bottles.  Losorea also insists that it did not sell any of the Fuel Barons products to the public, to any distributor for resale, or to any retailer.

Losorea never designed, manufactured, distributed or sold the Firelites firepots, including the firepot involved in the incident at issue in this case.  Losorea always believed that NAPA, on its own behalf and as agent for Fuel Barons, distributed and sold the Fuel Barons products.  The only agreement Losorea has with Fuel Barons is an unexecuted agreement to act as a contract packager of Fuel Barons products on a bottling fee basis.  Losorea claims that it does not have any agreement with NAPA or Fresh Market.

Plaintiff counters that Losorea has not met its burden, which shifted based on the allegations of the Second Amended Complaint.  According to Plaintiff, Losorea has failed to rebut these allegations because the averment that Losorea was not the only packager who bottled Fuel Barons products, is insufficient to overcome the allegation that Losorea committed a tort in Florida.  Plaintiff also contends that the evidentiary submissions of Losorea contradict the MSDS attached to the response.  Although the MSDS states on its face that Losorea is the manufacturer of the gel fuel, Losorea's president denies that it was or is a manufacturer.  Another possible contradiction, according to Plaintiff, is the president's statement that no evidence confirms that the bottle purchased by Plaintiff was one of the bottles packaged by Losorea, compared with his statement denying any knowledge of where the bottles it packaged would be shipped.

The Court finds Plaintiff has failed to submit any proof to create a contradiction either within the declarations of Losorea's president or between the declarations and the MSDS.  Losorea's president had no knowledge that the MSDS posted by Defendant

NAPA contained the incorrect manufacturing information until after the filing of this lawsuit when it was presented with a copy.[43]  According to Losorea's president, Losorea "had no involvement whatsoever in the design, manufacture, distribution or sale of the Firelites firepots."[44]  Based on the uncontradicted declarations, Losorea is not a manufacturer of the gel fuels at issue in this case, but is merely a packager.

Because specific jurisdiction requires a showing of connexity or a causal connection between the defendant's contacts with the state and the cause of action,[45] Florida's long-arm statute does not reach Losorea under any of the three categories urged by Plaintiff.[46]  Losorea does not conduct business under section 48.193(1)(a)1., because any discrepancy between the Plaintiff's allegations that Losorea was a manufacturer of the gel fuel and the declaration that Losorea is not a manufacturer, but only a packager and, in fact, not the only packager of Fuel Barons products, may be easily reconciled.  As to the commission of a tort pursuant to section 48.193(1)(a)2., Plaintiff has not factually tied any actions of Losorea to the incident that is the subject matter of this lawsuit. Finally, with respect to section 48.193(1)(a)6., causing injury in Florida arising out of an

---

[43]  See docket 36-1, para. 14.

[44]  See docket 36-1, para. 9.

[45]  See Canale v. Rubin, 20 So.3d 463, 466 (Fla.Dist.Ct.App. 2009) (citing Wendt v. Horowitz, 822 So.2d 1252, 1260)); Mio, LLC v. Valentino's of Am., Inc., Case No. 8:13-cv-191-T-26TGW, 2013 WL 3364392, at *5 n.26 (M.D. Fla. July 3, 2013).

[46]  § 48.193(1)(a)1., 2. & 6., Fla. Stat.

act by the defendant outside the state, Plaintiff has not established that Losorea was a manufacturer of the products of Fuel Barons.  Thus, there was no act committed by Losorea that caused injury in Florida.

General jurisdiction under Florida's long-arm statute, section 48.193(2), which covers a defendant's activities unrelated to the litigation, does not reach Losorea either. General jurisdiction requires the defendant to be "engaged in substantial and not isolated activity" in Florida, warranting a more demanding showing of "continuous and systematic" general business contacts than specific jurisdiction under section 48.193(1)(a)1.  See Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2002); Vos, B.V. v. Payen, 15 So.3d 734, 736 (Fla.Dist.Ct.App. 2009).[47]  As noted above, specific jurisdiction under section 48.193(1)(a)1. was resolved against Plaintiff. Nevertheless, Plaintiff intimates that Losorea's sales in Florida constitutes substantial activity.  Case law supports a finding, however, that the income from Losorea's sales in Florida are minimal and sporadic, and therefore de minimus.  See TRW Vehicle Safety Sys. Inc. v. Santiso, 980 So.2d 1149, 1153 (Fla.Dist.Ct.App.), rev. denied, 994 So.2d 1106 (Fla. 2008) (holding that small percentage of company's total sales were de minimus, such as 0.289%, and therefore no general jurisdiction over defendant); Crowe v. Paragon Relocation Res., Inc., 506 F.Supp.2d 1113, 1123-24 (N.D. Fla. 2007) (holding that sales levels of 2.7% of yearly revenues did not establish general jurisdiction, and

---

[47]  See also Mio, LLC, 2013 WL 3364392, at *5.

citing cases with as much as 12.9% being insufficient); <u>Snow</u>, 450 F.3d at 1319 (holding that less than one percent of law firm's revenue from matters connected with Florida, together with absence of physical presence in Florida, did not establish general jurisdiction).

Based on the findings with respect to the first part of the long-arm statute analysis, the Court need not discuss the second part involving constitutional minimum contacts and traditional notions of fair play.  It is therefore **ORDERED AND ADJUDGED** as follows:

(1)     Defendant, Losorea Packaging, Inc.'s Motion to Dismiss (Dkt. 36) is **GRANTED.**

(2)     Defendant Losorea is dismissed from this case with prejudice.

**DONE AND ORDERED** at Tampa, Florida, on July 3, 2015.


__s/*Richard A. Lazzara*_____
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


<u>COPIES FURNISHED TO</u>:
Counsel of Record